## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------

SHIVA STEIN,                                          :
                                                      :
        Plaintiff,                    :    Civil Action No. _____
                                                      :
v.                                                    :    **COMPLAINT FOR VIOLATIONS OF**
                                                      :    **SECTIONS 14(a) AND 20(a) OF THE**
KEMET CORPORATION, FRANK G.                           :    **SECURITIES EXCHANGE ACT OF**
BRANDENBERG, WILFRIED BACKES,                         :    **1934**
GURMINDER S. BEDI, JACOB KOTZUBEI,                    :
WILLIAM LOWE, E. ERWIN MADDREY,                       :    **JURY TRIAL DEMANDED**
II, YASUKO MATSUMOTO, ROBERT G.                       :
PAUL, AND KAREN M. ROGGE,                             :
                                                      :
        Defendants.                   :

---------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

    1.    This is an action brought by Plaintiff against Kemet Corporation ("Kemet or the "Company") and the members Kemet's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Kemet by Yageo Corporation, a corporation organized under the laws of the Republic of China ("Yageo"), and its affiliates.

    2.    Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on December 26, 2019 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Sky Merger Sub Inc. ("Merger Sub"), a wholly owned subsidiary of Yageo, will merge with and into Kemet with Kemet surviving the merger and becoming an wholly owned subsidiary of Yageo (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Kemet common share issued and outstanding will be converted into the right to receive $27.20 (the "Merger Consideration").

3.      As discussed below, Defendants have asked Kemet stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Company, Goldman Sachs & Co. LLC ("Goldman Sachs"), in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Kemet stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Kemet in incorporated in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Kemet common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Frank G. Brandenberg has served as a member of the Board since 2003 and is currently the Chairman of the Board.

11.     Individual Defendant Wilfried Backes has served as a member of the Board since 2008.

12.     Individual Defendant Gurminder S. Bedi has served as a member of the Board since 2006.

13.     Individual Defendant Jacob Kotzubei has served as a member of the Board since 2011.

14.     Individual Defendant William M. Lowe, Jr. has served as a member of the Board since 2018 and is the Company's Chief Executive Officer.

15.     Individual Defendant E. Erwin Maddrey, II has served as a member of the Board since 1992.

16.     Individual Defendant Yasuko Matsumoto has served as a member of the Board since 2017.

17.     Individual Defendant Robert G. Paul has served as a member of the Board since 2006.

18.     Individual Defendant Karen M. Rogge has served as a member of the Board since 2018.

19.     Defendant Kemet is incorporated in Delaware and maintains its principal offices at One East Broward Boulevard, Fort Lauderdale, Florida 33301.  The Company's common stock trades on the New York Stock Exchange under the symbol "KEM."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

22.     KEMET manufactures and sells passive electronic components under the KEMET brand worldwide. The Company operates in three segments: Solid Capacitors; Film and Electrolytic; and Electro-Magnetic, Sensors, and Actuators. It offers tantalum, aluminum polymer, and ceramic capacitors; film, paper, and wet aluminum electrolytic capacitors; electromagnetic interference filters; and electro-magnetic compatible materials and devices, piezo materials and

actuators, and various types of sensors. The Company serves electronics original equipment manufacturers, electronics manufacturing services providers, and distributors in various industries, including automotive, communications, computer-related, industrial, consumer, military/aerospace, and alternative energy. It sells its products through direct sales force and independent sales representatives. The Company was founded in 1919 and is headquartered in Fort Lauderdale, Florida.

23.     On November 11, 2019, Yageo and Kemet jointly announced the Proposed Transaction:

> NEW TAIPEI CITY, Taiwan and FORT LAUDERDALE, Fla., Nov. 11, 2019 (GLOBE NEWSWIRE) -- Yageo Corporation (TAIEX: 2327) ("Yageo") and KEMET Corporation ("KEMET") (NYSE: KEM) today announced that they have entered into a definitive agreement under which Yageo will acquire all of the outstanding shares of KEMET's common stock for US$27.20 per share in an all-cash transaction valued at US $1.8 billion, including the assumption of net debt. The transaction has been approved by the Boards of Directors of both companies.
>
> The purchase price represents a premium of 26% to KEMET's volume weighted average price ("VWAP") for the last 30 trading days and 37% to its VWAP for the last 90 trading days.
>
> Established in 1919 and headquartered in Fort Lauderdale, Florida, KEMET is a leading global supplier of high-end electronic components with a global footprint that includes 23 manufacturing facilities and approximately 14,000 employees located in 22 countries in the Americas, Asia and Europe. KEMET's main products include tantalum capacitors, ceramic capacitors, magnetic, sensors and actuators, and film and electrolytic capacitors. KEMET's products serve a number of applications, such as advanced automotive electronics, industrial applications, aerospace, medical, as well as smartphones, cloud/networking equipment, wireless communications, alternative energy and 5G technology. Holding more than 1,600 patents and trademarks worldwide, KEMET has established a leading position for its products via its advanced R&D and technical staff and design-in capabilities.

Together with KEMET, Yageo will be well positioned as a one-stop provider of passive electronic components, including a leading portfolio of polymer, tantalum, ceramic, film and electrolytic capacitors, chip resistors, circuit protection as well as magnetics, sensors and actuators, all addressing a full range of end market segments. The combined company will have an enhanced global footprint and be better able to partner with long-standing, blue chip customers worldwide through a combined 42 manufacturing plants and 14 dedicated R&D centers.

Pierre Chen, Chairman and Chief Executive Officer of Yageo, said, "KEMET has remarkable technology innovation capabilities and a proven track record of integrating cross-border acquisitions. We have been following their success with great admiration and look forward to creating a new legacy for the combined company. KEMET gives us the extraordinary opportunity to combine our strengths to achieve synergies in product and technology offerings as well as geographic coverage. The integration will enhance our ability to serve customers in consumer electronics as well as in the high-end automotive, industrial, aerospace, telecom and medical sectors. I look forward to partnering with KEMET's employees to drive future growth and deliver enhanced value for our shareholders and customers."

William M. Lowe, Jr., Chief Executive Officer of KEMET, said, "We are pleased to reach this agreement with Yageo, which will deliver the certainty of immediate cash to our shareholders at a premium. After a thorough process, the KEMET Board of Directors determined that this transaction is in the best interests of KEMET shareholders, customers and employees, and is a testament to our team's dedication to providing our customers with the broadest selection of passive component technologies and superior service in the industry. I am confident that the combination of these two companies will provide customers with an enhanced experience and our employees with greater opportunities worldwide and we look forward to completing this transaction and ensuring a seamless transition."

**Transaction Benefits**

The combination of Yageo and KEMET will create an industry leader in the $28 to $32 billion passive components industry, with combined annual revenues of approximately US$3 billion1. Yageo and KEMET each have a proven track record of completing major cross-border acquisitions and believe this transaction will generate greater value for customers and shareholders of both companies.

The acquisition of KEMET will:

- Expand Yageo's product portfolio and enhance Yageo's ability to serve as a one-stop product solution to customers serving a range of segments and mission-critical applications;
- Enhance Yageo's global footprint with additional operational scale across North America, Europe and Asia with an increased ability to penetrate attractive, high-growth segments and applications;
- Drive profitability with meaningful cost synergies and greater efficiencies by leveraging KEMET's structural transformation that resulted in increased and sustainable margins, as well as an enhanced durability of KEMET's revenue base;
- Enable Yageo to leverage KEMET's presence and success in Japan through the consolidation synergy of KEMET and TOKIN;
- Increase Yageo's presence providing advanced products to the automotive electronics, 5G networking and communications, robotics and automation and industrial segments, including power supply; and
- Scale KEMET's business in Greater China and ASEAN region through Yageo's regional presence and sales channels

**Financing, Timing and Approvals**

The transaction is not subject to a financing contingency. Yageo intends to fund the transaction with a combination of cash on hand and committed financing.

The transaction, which is expected to close in the second half of 2020, is subject to customary closing conditions and the receipt of required regulatory approvals.

Following close of the transaction, KEMET will become a wholly owned subsidiary of Yageo and KEMET's common stock will no longer be listed on any public market.

**Advisors**

Citi is serving as financial advisor to Yageo, and Simpson Thacher & Bartlett LLP and Tsar & Tsai Law Firm in Taiwan served as legal advisors. Goldman Sachs & Co. LLC is serving as financial advisor

to KEMET and Skadden, Arps, Slate, Meagher & Flom LLP is
serving as legal advisor.

24.     The Board is recommending to the Company's shareholders to vote in favor of the

Proposed Transaction. It is therefore imperative that Kemet's stockholders are provided with the

material information that has been omitted from the Proxy Statement, so that they can

meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the

forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

25.     On December 26, 2019, Kemet filed the Proxy Statement with the SEC in

connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's

stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The

Individual Defendants were obligated to carefully review the Proxy Statement before it was filed

with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any

material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or

omits material information that is necessary for the Company's stockholders to make an informed

decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections

14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Kemet Financial Projections*

26.     The Proxy Statement fails to provide material information concerning financial

projections prepared by Kemet management and relied upon by Goldman Sachs in its analyses.

The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the

Company prepared certain non-public financial forecasts (the "Company Projections") and

provided them to the Board and the financial advisor with forming a view about the stand-alone

valuation of the Company. Proxy Statement at 61-63. Accordingly, the Proxy Statement should

have, but fails to provide, certain information in the projections that Kemet management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     For the Initial Forecasts and November 2 Updated Forecasts provided to Yageo, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2020 through 2024: Adjusted EBIT, Adjusted EBITDA, Adjusted EBITDA Margin, and Adjusted EPS, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Proxy Statement at 61.

28.     For the November 9 Forecasts not provided to Yageo (but provided to Goldman Sachs), the Proxy Statement provides values for non-GAAP financial metrics for fiscal years 2020 through 2024: Adjusted EBIT, Adjusted EBITDA, Adjusted EBITDA Margin, Adjusted EPS, Free Cash Flow, and Unlevered free cash flow (through fiscal year 2027), but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Proxy Statement at 62.

29.     When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not

misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

32.     With respect to Goldman Sachs's *Implied Premia and Multiples Analysis*, the Proxy Statement fails to disclose the net debt of the Company as of September 30, 2019. Proxy Statement at 55.

33.     With respect to Goldman Sachs's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the unlevered cash flow for fiscal years 2020 through 2027 and line items used to calculate the figures; (ii) the inputs and assumptions underlying the range of discount

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

rates ranging from 11.0% to 13.0%, (iii) the range of illustrative terminal values for the Company; and (iv) the number of fully diluted shares of Company common stock outstanding. Proxy Statement at 56.

34.     With respect to the *Illustrative Present Value of Future Stock Price Analysis*, the Proxy Statement fails to disclose: (i) the total number of fully diluted shares of Company common stock outstanding; and (ii) the specific inputs and assumptions underlying the discount rate of 12.1%.

35.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

38.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analyses that were prepared by Goldman Sachs and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.   Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).   The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.   Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

41.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and

omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.    The Individual Defendants acted as controlling persons of Kemet within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Kemet, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Kemet, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Kemet, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains

the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.       Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.       Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.       Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.       Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 27, 2019

**RIGRODSKY & LONG, P.A.**

By:    */s/ Gina M. Serra*
       _____
       Brian D. Long (#4347)
       Gina M. Serra (#5387)

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

       300 Delaware Avenue, Suite 1220
       Wilmington, DE 19801
       Telephone: (302) 295-5310
       Facsimile: (302) 654-7530
       Email: bdl@rl-legal.com
       Email: gms@rl-legal.com

       *Attorneys for Plaintiff*